Jane Martinez
CJA Counsel for Defendant/petitioner
Law Office of Jane B. Martinez, LLC
P.O. Box 113201
Anchorage, AK  99511
(907) 264-6793

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff/respondent, | ) |
| | ) |
| v. | ) |
| | ) |
| SENECA LOYAL NEAL, | ) |
| | ) D.Ct. No.  4:14-cr-00027-RRB-1 |
| | ) |
| Defendant/petitioner, | ) |
| _____ | ) |

**MOTION FOR RELEASE OR DETENTION REVIEW HEARING**

COMES NOW the defendant/petitioner, Seneca Neal, by and through undersigned counsel, and hereby moves this Court for an order releasing him from custody (pending resolution of his 18 USC 2255 claim) based upon the following proposal, or for a detention review hearing if the Court requires additional information.

Mr. Neal was convicted of drug conspiracy[1] and distributing a controlled substance[2] on August 17, 2016.  [Dkt. 225]  This is Mr. Neal's first request for

---

[1]      21 USC 846, 841
[2]      21 USC 841

1

detention review. He is in custody at Safford FIC with a release date of May 12, 2035. It appears that Mr. Neal has been incarcerated since November 30, 2016. [Dkt. 214 at 2]

Mr. Neal has shown that he can successfully follow through with treatment programs. [R. 209 at 25] Mr. Neal reported to counsel that he has had no negative reports while incarcerated. He had been participating in programs and completed about 10 programs while incarcerated before the COVID-19 pandemic began, and he also had been teaching classes and working a job while incarcerated. It is counsel's understanding that programs offered to inmates are on hold during the pandemic, therefore it is unlikely Mr. Neal will have the opportunity to pursue any more programs for the foreseeable future if he remains incarcerated. However, Mr. Neal currently has an opportunity to participate in House of Transformations. HOT staff has contacted counsel and confirmed that a bed is available for Mr. Neal if the court grants this motion. HOT provides a sober living environment and programs to help people transitioning back into society. It is counsel's understanding, from speaking with staff at HOT, that although HOT cannot offer all of its usual programs due to COVID-19, HOT still supports its residents and has been offering what it is able to under the unique circumstances posed by COVID-19. In other words, Mr. Neal will have some beneficial programs at HOT, but if incarcerated he will likely have none for the foreseeable future.

**The COVID-19 pandemic presents extraordinary circumstances for persons incarcerated in FCI Safford**

The COVID-19 pandemic continues to rage. According to the Center for Disease Control, the numbers of COVID-19 in the United States as of November 5, 2020 are over 9,463,782 cases and 233,129 deaths.[3] According to the BOP, as of November 5, 2020 it reports that its facilities have had over 20,000 COVID-19 inmate and staff infections, and 134 inmate and staff deaths from COVID-19.[4] According to the Marshall Project, which has been tracking COVID-19 infections in prisons since March 2020, 147,100 people in prison have tested positive across the country and at least 1,246 deaths from coronavirus have occurred among prisoners.[5] The disease is highly contagious and spreading rapidly throughout the country, particularly in correctional facilities. Specifically at FCI Safford, BOP reports 6 inmates and 6 staff have tested positive for COVID-19.[6] This does not include the number of people who are asymptomatic and have not been tested.

The virus remains active for three hours in the air, and remains detectible on plastic and stainless steel for 72 hours.[7] The virus is transmitted while people are pre-symptomatic or asymptomatic, making it incredibly hard to isolate and contain.[8]

---

[3] https://covid.cdc.gov/covid-data-tracker/#cases_casesinlast7days (last visited November 5, 2020).

[4] https://www.bop.gov/coronavirus/index.jsp (last visited November 5, 2020).

[5] *See* https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons (last visited October 22, 2020).

[6] https://www.bop.gov/coronavirus(last visited November 11, 2020).

[7] https://www.medrxiv.org/content/10.1101/2020.03.09.20033217v1.full.pdf

[8] https://www.medrxiv.org/content/10.1101/2020.03.09.20033217v1.full.pdf.

This makes a correctional facility in general a particularly dangerous place to be. But conditions at Safford are such that it is virtually impossible to maintain social distancing and proper hygiene to prevent the spread of COVID-19. Mr. Neal related to counsel that 8 inmates are housed in cubes that are about 12 feet by 15 feet. About 2-3 feet separates bunk beds. A partition wall that does not go all the way the ceiling separates bunks. Inmates are in extremely close proximity to each other, being in common areas with about 200 inmates every day, and additionally inmates come in contact with staff who come and go from the facility. For about 150-80 inmates that Mr. Neal is grouped with, there are 2 bathrooms, 8 sinks and 8 showers. **"95% of inmates do not wear a mask."** Walking down the hallway exposes a person to about 60-70 other people. Under normal conditions COVID-19 can easily spread, but under the conditions at Safford, a single infected person could cause COVID-19 to spread through the population like wildfire. Further, if COVID-19 infects a large number of inmates at Safford, it will be virtually impossible for prisoners to receive adequate medical care.

In *Brown v. Plata*, the Supreme Court explained that a prisoner "may suffer or die if not provided adequate medical care. A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society." 563 U.S. 493, 510–11 (2011).

**Despite the Presumption for Remand under 18 U.S.C. § 3143(a)(2), Release is Warranted Due to the Exceptional Circumstances Presented by the COVID-19 Crisis.**

Defendant/petitioner recognizes that generally once a person has been convicted and sentenced, they begin serving their sentence. It is true that in general, the Court must order detained any defendant who has been "found guilty of an offense in a case described in 18 U.S.C. 3142(f)(1)(A), (B), or (C)" while they await sentencing, absent a finding that the defendant is likely to prevail on a motion for acquittal or new trial, or the government does not seek a custodial sentence. 18 U.S.C. § 3143(a)(2). However, "A person subject to detention pursuant to section 3143(a)(2) . . . , and who meets the conditions of release set forth in section 3143(a)(1) . . . may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." Under 18 USC 3143(a)(1) release can be granted if the Court finds by "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." While these statutes govern release pending sentence or appeal, there is no statutory prohibition to release pending an 18 USC 2255 claim and for the same reasons that a person could be released pending sentencing or appeal, a person who can establish exceptional reasons for release pending a 2255 claim should likewise be released pending such claim.

The district court has authority to determine whether there are "exceptional circumstances" warranting release notwithstanding section 3143(a)(2). *United*

5

*States v. Garcia*, 340 F.3d 1013, 1014 n.1, 1015 n. 2 (9th Cir. 2003) The *Garcia* court explained that "exceptional circumstances" are "circumstances that would render the hardships of prison [or jail pending sentencing] unusually harsh for a particular defendant," including situations where incarceration "would impose exceptional risks on a defendant involving [her] physical or mental well-being." *Id.* at 1019-1020.

Here, exceptional reasons for Mr. Neal's short-term release pending resolution of his 2255 claim are present. The threat posed to the jail population by COVID-19 renders the hardships of continued detention unusually severe. Moreover, continued detention imposes an exceptional risk that Mr. Neal will be exposed to carriers of the virus in an environment that can neither contain, adequately test for, or treat the virus, which poses a severe threat to his physical and emotional wellbeing. Accordingly, upon a finding that conditions can be fashioned to mitigate the risk of flight and danger to the community, Mr. Neal should be released for the period of time while he litigates his 2255 claim.

Finally, Mr. Neal's 2255 claims are not frivolous. Mr. Neal's main claim revolves around the search and seizure that occurred at his apartment. [Dkt 270] This court found that the Trooper's entry into the hallway of the apartment building "constituted both a trespass and an impermissible search under the Fourth Amendment to the U.S. Constitution; the evidence obtained from the search was then wrongfully used in the magistrate's determination of probable cause for a subsequent search warrant." [Dkt. 159 at 11] The 2255 claim involves a Trooper's

6

body audio that was not utilized during the litigation of the validity of the search.  If Mr. Neal is correct that the search and seizure were unconstitutional, the evidence gained as a result would be suppressed and Mr. Neal's convictions would be reversed.  In such a case, it is extremely unlikely that Mr. Neal would face a retrial because the government would be unable to use the suppressed evidence.  As such, if Mr. Neal prevails on his 2255 claim, it appears that he would not have to return to incarceration.  If, on the other hand, he does not prevail he would at least have the benefit of some treatment, monitoring, and a safer place to live during the time spent at HOT away from Safford where his risk of COVID-19 exposure is exceptional and terrifying.

### Under Mr. Neal's release plan, he would not be a flight risk or danger to any person or the community.

House of Transformations is a program that helps people transition back into society.  HOT has rules that require its residents to be substance-free, to only leave the premises when allowed, and participate in HOT's programs.  If the court wants more details about HOT's rules and restrictions a staff person could appear telephonically to provide details.  HOT has accepted Mr. Neal as a client and is holding a bed for him.  Because Mr. Neal will be under House of Transformations' monitoring, and because HOT provides a substance-free living environment and provides oversight of its residents, Mr. Neal will not be a danger to the community or to any person.  Mr. Neal has community ties in Alaska.  He has had numerous friends and family visit him while incarcerated in Alaska.  [R. 24]  His ties to the

7

community, HOT oversight, and lack of any recent failures to appear in court[9]

indicate that he should not be a flight risk if released.  Mr. Neal requests an order

releasing him to House of Transformations.  A Proposed Order is attached.


DATED this 13th day of November, 2020.

CERTIFICATE OF SERVICE
On the above date, a copy of
the foregoing document was served
ELECTRONICALLY on:

AUSA D. Doty
AUSA R. Tansey
AUSA J. Barkeley

*/s/Jane Martinez*

*/s/ Jane Martinez*
Jane Martinez
CJA Attorney For Defendant/petitioner
Alaska Bar No: 9712097
Law Office of Jane B. Martinez, LLC
P.O. Box 113201
Anchorage, AK 99511
(907) 264-6793 (ph.)

---

[9]     According to the PSR, in 1996 when Mr. Neal was 19 years old he missed two court hearings (the missed court hearing on February 22, 1996 may have been a continued hearing from the missed February 7, 1996 date, as both missed hearings were close in time in the same case).  Since that time, Mr. Neal has had multiple court hearings and no more failures to appear.

8