MICHAEL J. HEYMAN
United States Attorney

CHRISTOPHER D. SCHROEDER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: christopher.schroeder@usdoj.gov

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | No. 4:14-cr-00027-01-RRB-SAO |
| SENECA LOYAL NEAL, | |
| Defendant. | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE**

COMES NOW the United States of America, by and through undersigned counsel,

and hereby respectfully submits this Response in Opposition to Defendant Seneca Loyal

Neal's Motion for Compassionate Release, filed at Dkt. 335.

## I. Facts and Procedural History.

In the fall of 2014, Alaska State Troopers investigating drug trafficking identified Seneca Neal as a large-scale distributor of heroin. On October 31, 2024, troopers served a search warrant at Brendan Strom's home in Wasilla and seized 255.7 grams of heroin valued at $80,000.[1] Strom identified Neal as his supplier. He said that he bought heroin from Neal weekly, usually about 10 ounces at a time for $30,000, which he resold in smaller amounts for profit.[2] In total, Strom testified that he bought 68 ounces (or 1.7 kilograms) of heroin from Neal between September and October 2014.[3] In fact, Strom admitted that he bought heroin from Neal the night before.[4]

Using directions from Strom, troopers identified Neal's residence on West 45th Avenue in Anchorage. They obtained a warrant to place a GPS tracking device on Neal's car and began monitoring his movements.[5] They observed that Neal often drove to an apartment building on Arctic Boulevard in Anchorage but stayed 30 minutes or less each time.[6] He parked at different locations a short walk from the building even though it had

---

[1] Dkt. 209 at ¶ 16.

[2] *Id.* at ¶ 17.

[3] *Id.* at ¶ 36.

[4] *Id.* at ¶ 17.

[5] *Id.* at ¶ 19.

[6] *Id.*

ample parking. He also took counter-surveillance measures as he returned home, including driving through parking lots, using indirect routes, and driving around the block near his residence.[7]

On November 19, 2014, Lamon Washington sold one ounce of heroin to another individual in Fairbanks.[8] Officers arrested Washington as he drove away from the scene of that sale and discovered $23,000 in cash in his vehicle.[9] Washington testified that he received multiple ounces of heroin from Neal at different times in the months leading up to his arrest and resold it to others, principally in the Fairbanks area.[10] In total, Neal provided Washington 153 ounces (about 3.8 kilograms) of heroin between November 2013 and November 2014.[11]

On November 30, 2014, agents contacted Neal outside of the Artic Boulevard apartment and detained him.[12] Troopers obtained a warrant for the apartment and recovered 440.2 grams of heroin and 69 grams of MDPV (bath salts).[13]

Following a three-day trial in 2016, the jury found Neal guilty of:

---

[7] *Id.*

[8] *Id.* at ¶ 27.

[9] *Id.* at ¶ 28.

[10] *Id.*

[11] *Id.* at ¶ 35.

[12] *Id.* at ¶ 23.

[13] *Id.* at ¶ 24.

- Count 1, Conspiracy to Possess Heroin with Intent to Distribute, in violation of 21 U.S.C. § 846 and 841(a)(1), (b)(1)(A),

- Count 5, Distribution of Heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B),

- Count 6, Distribution of Heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and

- Count 7, Possession of Heroin with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B).[14]

Between these various incidents, Neal was accountable for 6.7 kilograms of heroin and 69 grams of MDPV under the guidelines, resulting in a base offense level of 32.[15] He also received a 2-level enhancement for maintaining a premises for the purpose of distributing controlled substances.[16] The total offense level was thus 34.[17]

Neal also had 12 criminal history points placing him in Criminal History Category V.[18] This total was based on prior convictions for Sexual Abuse of a Minor (3 points), Misconduct Involving Controlled Substances (3 points), a prior federal conviction for Conspiracy to Distribute Controlled Substances (3 points), Operating Under the Influence

---

[14] Dkt. 191.

[15] Dkt. 209 at ¶ 42 (citing U.S.S.G. § 2D1.1(c)(4)).

[16] *Id.* at ¶ 43 (citing U.S.S.G. § 2D1.1(b)(12)).

[17] *Id.* at ¶ 58.

[18] *Id.* at ¶ 72.

(1 point), and being under a criminal justice sentence at the time of the offense (2 points).[19] With a total offense level of 34 and a Criminal History Category of V, Neal's advisory guideline range was 235-293 months imprisonment.[20]

This Court sentenced Neal to 264 months imprisonment.[21] Neal appealed his conviction to the Ninth Circuit, which affirmed.[22] Neal then filed a motion under 28 U.S.C. § 2255 raising a claim of ineffective assistance of counsel.[23] This Court denied that motion.[24] Neal also appealed that decision to the Ninth Circuit, which affirmed this Court once again.[25]

According to the Bureau of Prisons, Neal is currently incarcerated at Safford FCI in Arizona. His projected release date is May 12, 2034.

## II. Legal Standard for a Motion for Compassionate Release.

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'"[26] Section 3582(c)(1)(A)(i) provides a narrow "except[ion]" to that principle,

---

[19] *Id.* at ¶¶ 63, 67, 68, 69, 71.

[20] Dkt. 226 at 1.

[21] Dkt. 225.

[22] *United States v. Neal*, 747 F. App'x 501 (9th Cir. 2018).

[23] Dkt. 270.

[24] Dkt. 316.

[25] *United States v. Neal*, No. 21-35452, 2022 WL 2128899 (9th Cir. June 14, 2022).

[26] *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. 3582(c)).

colloquially known as "compassionate release," where "extraordinary and compelling reasons warrant" a reduction in the defendant's sentence.[27] And even if a defendant demonstrates such an extraordinary and compelling reason, he must further demonstrate that the sentencing factors set forth in 18 U.S.C. § 3553(a) support his request.[28] A district court must deny a motion for compassionate release if the defendant's motion fails on either ground.[29] "As compassionate release derogates from the principle of finality, it is a 'narrow' remedy[.]"[30]

The Sentencing Commission has issued a policy statement identifying six circumstances, when considered individually or in combination, that allow a district court to reduce a term of imprisonment under § 3582(c)(1)(A). As is pertinent here, these circumstances include the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent."[31] As of May 2023, this policy statement is binding on district courts.[32]

---

[27] 18 U.S.C. § 3582(c)(1)(A).

[28] *Id.*

[29] *See United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021).

[30] *United States v. Wright*, 46 F.4th 938, 944 (9th Cir. 2022) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

[31] U.S.S.G. § 1B1.13(b)(3)(C).

[32] *See United States v. Bryant*, 144 F.4th 1119, 1124 (9th Cir. 2025).

### III. Neal Fails to Establish an Extraordinary or Compelling Reason for Release.

Neal proposes five separate grounds on which he believes this Court should release him from prison. None of them establishes an extraordinary and compelling reason to modify Neal's sentence.

### a. Neal is Not the Only Available Caregiver for His Mother.

According to the presentence report, Neal has two maternal half-siblings – Jason Pinion of Anchorage and Chevis Hasley of Kent, Washington.[33] At the time of his sentencing in 2016, he had been in a long-term relationship with his girlfriend Tatiana Merchant.[34] He had a daughter, Cheyenne Womack (a/k/a Cheyenne White), from a prior relationship with a woman named Sandra Wilkerson.[35] Neal's mother adopted Cheyenne.[36] He had a second daughter named Asyata Davis from a prior relationship with Ebony Davis.[37] He had a third daughter, Daja Brown, from a prior relationship with Danille Brown.[38] And he had a son, Demetrius Chevis Neal-Rickman, from a prior relationship with Bertha Rickman.[39]

---

[33] *Id.* at ¶ 79.

[34] *Id.* at ¶ 82.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

Neal's mother therefore has at least six other relatives – two other children and four grandchildren – who could potentially serve as caregivers for her. Neal's motion, however, addresses only one of his daughters, Cheyenne White, and ignores the other five relatives altogether.[40] And even with respect to White, Neal says only that she recently "was forced to seek full-time employment outside the home" and was "no longer able to provide the care that her grandmother requires[.]"[41] Neal provides no information as to whether White obtained full-time employment; what that employment is; what hours she works; or a letter or declaration from White indicating that she can no longer serve as a caregiver for her grandmother. Neal has thus failed to demonstrate that he "would be the only available caregiver for the parent," as the binding policy statement requires.[42]

### b. Neal Would Be Eligible for the Same Sentence Under Current Law.

At the time of Neal's trial, a defendant who was convicted of a controlled substance offense in violation of 21 U.S.C. § 841(a)(1), who was sentenced under the penalty provision of § 841(b)(1)(A) because the offense involved one kilogram or more of heroin, and with a prior conviction for a serious drug offense, faced a mandatory minimum of 20

---

[40] Dkt. 335 at 14. Neal attaches a letter from one of his other children, Asyata Davis, but the letter provides no indication as to why Davis cannot serve as a caregiver for her grandmother. Dkt. 335-5.

[41] *Id.*

[42] U.S.S.G. § 1B1.13(b)(3)(C).

years imprisonment.[43] In the First Step Act of 2018, Congress reduced the mandatory minimum applicable to such defendants to 15 years.[44]

This amendment is not relevant to this case, however, because the Court imposed a sentence of 264 months – two years above the mandatory minimum of 20 years. Had the Court imposed the minimum sentence of 240 months, Neal might perhaps be able to infer that the Court felt constrained by the mandatory minimum and might have imposed a lower sentence if it had the discretion to do so. But where, as here, the Court's exercise of its discretion results in a sentence above the mandatory minimum, the defendant cannot establish that but for the law in effect at the time, the Court would have imposed a lower sentence. The Court imposed a sentence within the guideline range, which has not changed since the time of Neal's sentencing.

Neal further errs by asserting, without supporting evidence or argument, that because of this change in the law "the government would not seek… an enhanced penalty under 21 U.S.C. § 851" if he were to be sentenced today.[45] To the contrary, effective February 5, 2025, Department of Justice policy generally requires that "prosecutors should charge and pursue the most serious, readily provable offense[,]" defined as "those with the

---

[43] 21 U.S.C. § 841(b)(1)(A) (2016).

[44] *See* First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222, § 401.

[45] Dkt. 335 at 16.

most significant mandatory minimum sentences[.]"[46] Moreover, Department policy now prohibits the government from "abandon[ing] pending charges to achieve a plea bargain that is inconsistent with the prosecutor's assessment of the seriousness of the defendant's conduct at the time the charges were filed."[47] If this case were charged today, the government would again pursue the most serious, readily provable offense by charging the enhanced statutory penalties allegation under § 851.

### c. Neal's Prior Conviction for Drug Conspiracy was a Serious Drug Felony.

The Controlled Substances Act provides for heightened mandatory minimum penalties for a defendant who commits such an offense "after a prior conviction for a serious drug felony[.]"[48] The term "serious drug felony" means "an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.)… for which a maximum term of imprisonment of ten years or more is prescribed by law[.]"[49] Neal had a prior federal conviction for Drug Conspiracy, in violation of 21 U.S.C. § 846 and 841(a)(1), (b)(1)(A) and (C).[50] This was an offense under the Controlled Substances Act that was punishable

---

[46] *See* Memorandum from Pamela Bondi, Att'y Gen., U.S. Dep't of Just., to All Department Employees, *General Policy Regarding Charging, Plea Negotiations, and Sentencing*, (Feb. 5, 2025), available at https://www.justice.gov/ag/media/1388541/dl.

[47] *Id.*

[48] 21 U.S.C. § 841(b)(1)(A).

[49] 18 U.S.C. § 924(e)(2)(A)(i).

[50] *See* Judgment Entry in *United States v. Seneca Neal*, No. 3:09-cr-00127-02-RRB, attached as Exhibit 1.

by ten years or more in prison.[51] In Neal's case, the existence of this prior conviction raised the mandatory minimum on Count 1 to 20 years.

There are two fatal flaws in Neal's argument that the Court should not consider Drug Conspiracy a serious drug offense today. First, Neal cites the wrong definition. Neal attempts to borrow language from the Fourth Circuit's decision in *United States v. Norman*, holding that Drug Conspiracy is not categorically a "controlled substance offense" for the purposes of an unrelated sentencing guideline enhancement.[52] But this is a different test, and one that has no relevance to this case. The statute at issue here does not require the prior conviction be a "controlled substance offense." It requires only that the prior conviction be "an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.)… for which a maximum term of imprisonment of ten years or more is prescribed by law[.]"[53] Neal's prior conviction for violating 21 U.S.C. § 846 and 841(a)(1) was an offense under the Controlled Substances Act, and it was punishable by ten years or more, making it a serious drug felony.[54]

Second, Neal's argument fails on its own terms because in 2023, the Sentencing Commission amended the guidelines to clarify that a "controlled substance offense"

---

[51] 21 U.S.C. § 841(b)(1)(A) (establishing a maximum penalty of life imprisonment).

[52] 935 F.3d 232, 237-39 (4th Cir. 2019) (citing U.S.S.G. § 4B1.2(b)).

[53] 18 U.S.C. § 924(e)(2)(A)(i).

[54] *See Leyva-Licea v. I.N.S.*, 187 F.3d 1147, 1150 (9th Cir. 1999) (recognizing that the Controlled Substances Act includes § 846).

included the inchoate "offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense."[55]

### d. Neal Does Not Establish Any Unwarranted Disparity in His Sentence.

Fourth, Neal gestures at the need to avoid unwarranted sentencing disparities but provides the Court no evidence to suggest such a disparity exists in this case. According to the Sentencing Commission's Judiciary Sentencing Information (JSIN) website, there were not enough defendants nationwide over the past five years with Neal's guideline range to draw any meaningful comparisons.[56] Neal's sentence was within the guideline range of 235-293 months. His guideline would be the same even if he was resentenced today. And given Neal's extreme criminal history, which included a felony sex offense against a 14-year-old girl, the Court would be well within its discretion to impose the same sentence again. Neal has not demonstrated the existence of an unwarranted sentencing disparity.

### e. Neal's Rehabilitation Is Not An Extraordinary or Compelling Reason.

Having failed to establish an extraordinary and compelling reason based on his other four arguments, Neal cannot make up the difference by relying upon other evidence of post-arrest rehabilitation. Such rehabilitation "is not, by itself, an extraordinary and

---

[55] U.S.S.G. § 4B1.2(d) (2023).

[56] *See* Judiciary Sentencing Information (JSIN) data, attached as Exhibit 2.

compelling reason[,]" and may only be "considered in combination with other circumstances" that establish an extraordinary and compelling reason.[57]

### IV. Neal Fails to Establish That the Sentencing Factors in 18 U.S.C. § 3553(a) Supported Early Release.

Even if Neal demonstrates an extraordinary and compelling reason for early release, the Court must still deny his motion "after considering the factors set forth in section 3553(a) to the extent that they are applicable" unless those factors also support release.[58] These factors included "the nature and circumstances of the offense[,]" "the history and characteristics of the defendant[,]" the need "to reflect the seriousness of the offense, to promote respect for the rule of law, and to provide just punishment for the offense[,]" the need "to afford adequate deterrence to criminal conduct[,]" the need "to protect the public from further crimes of the defendant[,]" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]"[59] None of those factors support early release in this case.

#### a. The Nature and Circumstances of the Offense.

Seneca Neal trafficked enormous quantities of heroin throughout Alaska. The testimony at trial established that he distributed upwards of 6.7 kilograms of heroin to multiple, lower-level dealers – an astronomical amount of heroin for a small district like

---

[57] U.S.S.G. § 1B1.13(d) (citing 28 U.S.C. § 994(t)).

[58] 18 U.S.C. § 3582(c)(1)(A).

[59] 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C), and (a)(6).

Alaska. He thrived by exploiting the weaknesses of those around him for profit. Text messages between Neal and Christeena Solomon, a sex worker addict who bought drugs from him, showed Neal demanding sexual favors from her in exchange for drugs.[60] He has never accepted responsibility or shown remorse for his actions, including in his most recent motion. The nature and circumstances of an offense involving the long-term distribution of 6.7 kilograms of heroin by an unrepentant career criminal are very serious and weigh heavily against Neal's early release.

### b. The History and Characteristics of the Defendant.

In 1995, Neal sexually assaulted a 14-year-old girl, holding her down and forcibly engaging in vaginal intercourse with her while she repeatedly begged him to stop.[61] Neal threatened the victim, saying, "Don't make me hurt you."[62] He then told her not to tell anyone about what had happened. He failed to appear for sentencing and fled the state. In 1997, he was arrested in Oklahoma and extradited back to Alaska.[63] He was sentenced to six years in prison, with four years suspended.[64]

In 2002, while Neal was on probation following his release from prison, he was arrested during a controlled delivery of a parcel containing 500 grams of cocaine to an

---

[60] Dkt. 212 at 2-3.

[61] Dkt. 209 at ¶ 63.

[62] *Id.*

[63] *Id.*

[64] *Id.*

*U.S. v. Neal*
No. 4:14-cr-00027-01-RRB-KFR          Page 14 of 19

apartment in Fairbanks.[65] He ran out of the apartment as officers made entry, threw the drugs into a dumpster, and hid. He pleaded guilty to Misconduct Involving a Controlled Substance in the Fourth Degree and was sentenced to five years in prison.[66]

Between November 2008 and February 2009, Neal distributed powder cocaine and crack cocaine three times to another individual.[67] He pleaded guilty before this Court to Drug Conspiracy and was sentenced to 41 months.[68] He was still on supervised release following this conviction at the time of the offenses in this case.[69]

Against this record, Neal's history and characteristics offer little in the way of mitigation. He did not suffer any physical or mental abuse during his upbringing.[70] He appears to have enjoyed a positive relationship with his mother.[71] He has no history of mental health issues.[72] He was not addicted to or abusing controlled substances at the time of the offense.[73] He is otherwise physically healthy.[74] Neal's history and characteristics

---

[65] *Id.* at ¶ 67.

[66] *Id.*

[67] *Id.* at ¶ 68.

[68] *Id.*

[69] *Id.* at ¶ 71.

[70] *Id.* at ¶ 80.

[71] *Id.*

[72] *Id.* at ¶ 86.

[73] *Id.* at ¶ 88.

[74] *Id.* at ¶ 85.

reveal a great deal of aggravating circumstances, but little if any mitigation to weigh against it, and this factor thus weighs against compassionate release.

### c. The Need to Promote Respect for the Law.

At no point in Neal's adult life has he shown he is willing or capable of respecting the law. He fled the state to avoid sentencing in his sexual assault case. He was still on probation for that conviction when he received the parcel containing 500 grams of cocaine. He was still on parole for his state drug case when he distributed powder and crack cocaine three times in his first federal case.[75] And he was still on supervised release in his first federal case when he committed the offenses here. That is three times that Neal has committed a new offense while under supervision following a previous offense. There is no reason based on this record for this Court to trust him again. Neal's request to dramatically reduce his sentence would be inconsistent with the substantial need to promote respect for the law by holding Neal accountable for a lifetime of criminality.

### d. The Need to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public.

At 48 years old, Neal poses a significant risk of recidivism. According to a 2022 study by the Sentencing Commission, 62.1% of drug trafficking defendants in Neal's age group and criminal history category were arrested again following their release from prison:[76]

---

[75] *Id.* at ¶ 67 (showing Neal was discharged from parole February 21, 2009).

[76] U.S. Sent'g Comm'n, *Recidivism of Federal Drug Trafficking Offenders Released in 2010* at 32 (January 2022), https://www.ussc.gov/sites/default/files/pdf/research-and

Table 4. Rearrest Rates by Age at Release and Criminal History Category for Federal Drug Trafficking Offenders Released in 2010

* N<=20  ** N<=10  . N=0

| Age | CHC I | CHC II | CHC III | CHC IV | CHC V | CHC VI | CO/ACC | Total |
|---|---|---|---|---|---|---|---|---|
| Younger than 21 | 65.0% | 85.0%* | 86.7%* | 100.0%** | . | . | . | 70.1% |
| 21 to 29 Years | 47.0% | 62.4% | 75.3% | 83.2% | 82.5% | 86.0% | 76.0% | 59.3% |
| 30 to 39 Years | 32.4% | 47.6% | 59.1% | 66.5% | 73.4% | 81.6% | 65.8% | 51.3% |
| 40-49 Years | 23.5% | 38.0% | 43.3% | 54.8% | 62.1% | 71.1% | 55.6% | 39.7% |
| 50-59 Years | 16.3% | 26.3% | 41.6% | 39.8% | 51.0% | 72.6% | 47.8% | 30.9% |
| 60 Years and Older | 10.9% | 6.8% | 27.5% | 15.0%* | 14.3%* | 57.1%* | 40.0% | 16.4% |
| Total | 33.3% | 46.2% | 57.6% | 64.1% | 69.4% | 77.4% | 58.9% | |

In the same study, the Sentencing Commission concluded that "recidivism is inversely associated with age. As age at release increased, the likelihood of rearrest decreased."[77]

On top of this, Neal has a prior conviction for sexually assaulting a minor. The risk to the public that he would pose if released is therefore quite significant. Neal's early release from custody would not afford adequate deterrence to criminal conduct or protect the public from future crimes.

### e.  The Need to Avoid Unwarranted Sentencing Disparities.

As mentioned above, there was an insufficient number of defendants nationwide over the past five years sentenced under the drug trafficking guideline of § 2D1.1 with a

publications/research-publications/2022/20220112_Recidivism-Drugs.pdf.

[77] *Id.*

total offense level of 34 and a Criminal History Category of V to yield any data.[78] Nevertheless, the Court can extrapolate some relevant information by looking at the groups of defendants one offense level above and below. For defendants with all those same criteria, but a total offense level of 33, the median length of imprisonment was 180 months.[79] For defendants with a total offense level of 35, the median length of imprisonment was 205 months.[80] It is fair to infer from this that, if there were a sufficient number of defendants with a total offense level of 34, their median sentence would be somewhere between 180 and 205 months.

Neal, however, has served only about 135 months since his arrest in January 2015.[81] His release now on time served would thus create an unwarranted sentencing disparity with what the Court can reasonably surmise would be similar defendants convicted of similar crimes. And even if Neal were to serve another five years in prison – giving him 195 months served and placing him right in the middle of where drug trafficking defendants in Category V with a total offense level of 34 would likely be – he would still have a prior felony conviction for raping a child. Given that very unique aggravating factor, Neal's 264-month sentence would still not be an unfair disparity.

//

---

[78] *See* Exhibit 2.

[79] *See* JSIN data (offense level 33), attached as Exhibit 3.

[80] *See* JSIN data (offense level 35), attached as Exhibit 4.

[81] Dkt. 209 at ¶ 11.

## V.    Conclusion.

For all the foregoing reasons, Neal has failed to establish either an extraordinary and compelling reason to modify his sentence or that the balance of the sentencing factors in 18 U.S.C. § 3553(a) support his immediate release. The government therefore respectfully asks this Honorable Court to deny Neal's motion.

RESPECTFULLY SUBMITTED this 5th day of April 2026 in Anchorage, Alaska.

SCOTT BRADFORD
United States Attorney

*s/ Christopher D. Schroeder*
CHRISTOPHER D. SCHROEDER
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2026,
a copy of the foregoing was
served via regular U.S. Mail on:

Seneca Loyal Neal, #36074-086
FCI Safford
Federal Correctional Institution
P.O. Box 9000
Stafford, AZ 85548

*s/ Christopher D. Schroeder*
Office of the U.S. Attorney