MICHAEL J. HEYMAN
United States Attorney

CHRISTOPHER D. SCHROEDER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: christopher.schroeder@usdoj.gov

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | No. 4:14-cr-00027-01-RRB-SAO |
| SENECA LOYAL NEAL, | |
| Defendant. | |

**CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR RECONSIDERATIO AT DKT. 341 AND MOTION FOR
SENTENCE REDUCTION AT DKT. 342**

COMES NOW the United States of America, by and through undersigned counsel,

and hereby respectfully submits this Consolidated Response in Opposition to Defendant

Seneca Loyal Neal's Motion for Reconsideration, filed at Dkt. 341, and Motion for

Sentence Reduction, filed at Dkt. 342.

//

## I.      The Court Should Deny Neal's Motion for Reconsideration.

A motion for reconsideration requires a showing of a "manifest error of law or fact[.]"[1] This is an extraordinarily high bar. "For reasons of judicial economy and finality, motions for reconsideration are disfavored and rarely granted."[2]

Nothing in Neal's motion comes close to establishing a manifest error of law or fact in this Court's judgment. Although Neal complains that this Court "adjudicated the motion on a one-sided record, without the benefit of adversarial testing[,]" the Court received and reviewed briefing from both parties before it ruled. Neal filed his motion, and the government responded. Neal did not have any right to file a reply brief.[3] In fact, the local rules prohibit the filing of reply briefs "[u]nless otherwise ordered by the court[.]"[4] It was Neal's obligation to provide the Court in his original motion with sufficient evidence to justify the relief he sought, rather than waiting until a reply brief the Court was under no obligation to allow. Even in his motion for reconsideration, Neal still does not tell the Court what evidence he would have provided that he did not provide the first time.

Moreover, the Court allowed Neal to file further briefing by both denying his motion without prejudice and by inviting him to file "a separate motion for sentence reduction that is focused on the significance of the First Step Act of 2018 and the impact the reduction of

---

[1] L.Crim.R. 47.1(g)(1)[A].

[2] *Resolution Trust Corp. v. Aetna Cas. and Sur. Co.*, 873 F.Supp. 1386, 1393 (D. Az. 1994).

[3] *See National Labor Relations Board v. Eclipse Lumber Co.*, 199 F.2d 684, 686 (9th Cir. 1952) (holding that there is no due process right to file a reply brief).

[4] L.Crim.R. 47.1(d).

the mandatory minimum should have on Defendant's sentence."[5] Neal has now done so. Because the Court left the door open to a second motion, Neal cannot show prejudice. The Court should deny his motion for reconsideration.

## II.    Facts and Background Relevant to the Instant Motion.

As outlined in the government's previous response, Seneca Neal was a large-scale distributor of heroin. Alaska State Troopers discovered 255.7 grams of heroin in a residence in Wasilla that Neal distributed to the resident. Through further investigation, State Troopers learned that Neal distributed 1.7 kilograms of heroin to one cooperator and 3.8 kilograms of heroin to a second cooperator over approximately one year leading up to November 2014. During a search of Neal's residence, officers recovered another 440 grams of heroin and 69 grams of MDPV (bath salts).[6]

Following a three-day trial in 2016, the jury found Neal guilty of Conspiracy to Possess Heroin with Intent to Distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A), two counts of Distribution of Heroin, and one count of Possession of Heroin with Intent to Distribute. The Court sentenced Neal to 264 months imprisonment, which was in the middle of a guideline range of 235-293 months imprisonment.[7]

According to the Bureau of Prisons, Neal is currently incarcerated at Safford FCI in Arizona. His projected release date is May 12, 2034.

---

[5] Dkt. 340 at 3.

[6] Dkt. 339 at 2-3.

[7] Dkt. 226 at 1.

### III.   Legal Standard for a Motion for Compassionate Release.

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'"[8] Section 3582(c)(1)(A)(i) provides a narrow "except[ion]" to that principle, colloquially known as "compassionate release," where "extraordinary and compelling reasons warrant" a reduction in the defendant's sentence.[9] And even if a defendant demonstrates such an extraordinary and compelling reason, he must further demonstrate that the sentencing factors set forth in 18 U.S.C. § 3553(a) support his request.[10] A district court must deny a motion for compassionate release if the defendant's motion fails on either ground.[11] "As compassionate release derogates from the principle of finality, it is a 'narrow' remedy[.]"[12]

The Sentencing Commission has issued a policy statement identifying six circumstances, when considered individually or in combination, that allow a district court to reduce a term of imprisonment under § 3582(c)(1)(A). As is pertinent here, these circumstances include cases in which a "defendant received an unusually long sentence" and there has been "a change in the law… but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at

---

[8] *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. 3582(c)).

[9] 18 U.S.C. § 3582(c)(1)(A).

[10] *Id.*

[11] *See United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021).

[12] *United States v. Wright*, 46 F.4th 938, 944 (9th Cir. 2022) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

the time the motion is filed, and after full consideration of the defendant's individualized circumstances."[13] As of May 2023, this policy statement is binding on district courts.[14]

**IV. Neal Fails to Establish an Extraordinary or Compelling Reason for Release Where He Would Be Eligible for the Same Sentence Under Current Law and His Guideline Range Remains the Same.**

At the time of Neal's trial, a defendant who was convicted of a controlled substance offense in violation of 21 U.S.C. § 841(a)(1), who was sentenced under the penalty provision of § 841(b)(1)(A) because the offense involved one kilogram or more of heroin, and with a prior conviction for a serious drug offense, faced a mandatory minimum of 20 years imprisonment.[15] In the First Step Act of 2018, Congress reduced the mandatory minimum applicable to such defendants to 15 years.[16] The government agrees that this constitutes a "change in the law" as described in § 1B1.13(b)(6).

Neal cannot prevail, however, merely by identifying a change in the law. He must also show both (1) that he "received an unusually long sentence" and (2) that such "change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed[.]"[17] He fails to do so for three reasons.

---

[13] U.S.S.G. § 1B1.13(b)(6).

[14] *See United States v. Bryant*, 144 F.4th 1119, 1124 (9th Cir. 2025).

[15] 21 U.S.C. § 841(b)(1)(A) (2016).

[16] *See* First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222, § 401.

[17] U.S.S.G. § 1B1.13(b)(6).

First, Neal did not receive an "unusually long sentence[.]"[18] "District courts have held that a sentence within the guideline range cannot be considered unusually long."[19] Neal does not dispute that his 264-month sentence would still be within the guideline range today. According to the Sentencing Commission, 51.5% of all defendants nationwide received a sentence within the guideline range in fiscal year 2025.[20] "[A] mid-guidelines sentence, by its very nature, cannot be considered *unusually* long."[21] "[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Sentencing Guidelines ranges. Since the district judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities."[22]

Second, Neal's sentence was not driven by the mandatory minimum. The Court imposed a sentence of 264 months, which was two years above the mandatory minimum of 240 months. Had the Court imposed the minimum sentence of 240 months, Neal might perhaps be able to infer that the Court felt constrained by the mandatory minimum and might have imposed a lower sentence if it had the discretion to do so. But where, as here,

---

[18] *Id.*

[19] *United States v. Lizarrala-Cedeno*, No. 2:04-CR-00015-SAB-1, 2025 WL 1819231, at *2 (E.D. Wa. July 1, 2025).

[20] *See* U.S. Sentencing Commission (USSC), *Quarterly Data Report: Fiscal Year 2025*, at 11 (May 2026), https://www.ussc.gov/research/data-reports/quarter/quarterly-sentencing-updates.

[21] *United States v. Steidell*, No. 12-cr-01259-DKW-02, 2024 WL 1414195, at *5 (D. Haw. Apr. 2, 2024) (emphasis in original).

[22] *Gall v. United States*, 552 U.S. 38, 54 (2007).

the Court's exercise of its discretion results in a sentence above the mandatory minimum, the defendant cannot establish that but for the law in effect at the time, the Court would have imposed a lower sentence. The mandatory minimum in effect at the time did not "produce" Neal's sentence, so the change in the mandatory minimum cannot "produce" a gross disparity.[23]

Third, Neal has not shown that the five-year difference in the mandatory minimum created a "gross disparity" between his sentence and the sentence he would receive today. "The vast majority of cases finding that the 'gross disparity' threshold has been met… deal with differences of decades."[24] In *United States v. Landeros-Valdez*, the district court denied the defendant's motion for a reduction in sentence based on an intervening change in the law that lowered the defendant's mandatory minimum from 20 years to 15.[25] The court surveyed the landscape of existing case law, noting that courts "have reached differing results as to what constitutes a gross disparity within the meaning of § 1B1.13(b)(6)."[26] The court found that "the five-year discrepancy between a 15-year mandatory minimum and a 20-year mandatory minimum is not what the Sentencing Commission had in mind when it referred to a 'gross disparity.'"[27] And in *United States v.*

---

[23] *Id.*

[24] *United States v. Douglas*, No. 11-CR-0324 (PJS/LIB), 2024 WL 2513646, at *2 (D. Minn. May 24, 2024) (collecting cases).

[25] No. 1:11-cr-0096-BLW, 2025 WL 70124, at *4-6 (D. Id. Jan. 10, 2025).

[26] *Id.* at *5.

[27] *Id.* at *6.

*Drummondo-Farias*, the court found that the "five-year difference in the mandatory minimum provides Defendant with no relief under § 1B1.13[b](6) – the change in the mandatory minimum from 20 years to 15 years did not produce a 'gross disparity' between the sentence being served and the sentence that would likely be imposed at the present time under the changed law."[28] The court went on to note that "[i]n fact, because the court sentenced above the mandatory minimum, the change in law had no impact on Defendant's sentence."[29] The same is true here. Neal received a sentence two years above the mandatory minimum, so the change in that mandatory minimum had no impact on his sentence.

It is not enough for Neal to "suggest that his sentence was largely based on a 20-year mandatory minimum, rather than on the Guidelines and the § 3553 sentencing factors."[30] Neal's sentence was within the guideline range and was fully justified based on his extensive and egregious criminal history, the exorbitant amount of drugs in this case, and his high likelihood of recidivism. Even if the Court might impose a lower sentence today, that mere possibility does not rise to the level of an "extraordinary and compelling" reason as required by § 3582.[31] "[C]ompassionate release is not sentencing or resentencing."[32] "Using the compassionate release statute to second-guess a sentencing

---

[28] No. 12-00174 JMS-1, 2025 WL 2986866, at *5 (D. Haw. Oct. 23, 2025).

[29] *Id.*

[30] *United States v. Gonzalez*, No. 1:03-cr-05165 JLT, 2025 WL 2299769, at *5 (E.D. Ca. Aug. 8, 2025).

[31] 18 U.S.C. § 3582(c)(1)(A).

[32] *United States v. Bryant*, 144 F.4th at 1128.

determination years later endorses 'an endless repetition of inquiry' into sentences that have already been through the wringer of judicial review."[33]

For all of these reasons, Neal has failed to demonstrate that his sentence was unusually long; that the intervening change in the law produced a disparity; or that the disparity was a gross disparity. He has thus failed to show an extraordinary and compelling reason for early release.

### V. Neal Fails to Establish That the Sentencing Factors in 18 U.S.C. § 3553(a) Supported Early Release.

Even if Neal demonstrates an extraordinary and compelling reason for early release, the Court must still deny his motion "after considering the factors set forth in section 3553(a) to the extent that they are applicable" unless those factors also support release.[34] These factors included "the nature and circumstances of the offense[,]" "the history and characteristics of the defendant[,]" the need "to reflect the seriousness of the offense, to promote respect for the rule of law, and to provide just punishment for the offense[,]" the need "to afford adequate deterrence to criminal conduct[,]" the need "to protect the public from further crimes of the defendant[,]" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]"[35] None of those factors support early release in this case.

//

---

[33] *Id.* (quoting *McCleskey v. Zant*, 499 U.S. 467, 492 (1991) (quotation omitted)).

[34] 18 U.S.C. § 3582(c)(1)(A).

[35] 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C), and (a)(6).

### a. The Nature and Circumstances of the Offense.

Seneca Neal trafficked enormous quantities of heroin throughout Alaska. The testimony at trial established that he distributed upwards of 6.7 kilograms of heroin to multiple, lower-level dealers – an astronomical amount of heroin for a small district like Alaska. He thrived by exploiting the weaknesses of those around him for profit. Text messages between Neal and Christeena Solomon, a sex worker addict who bought drugs from him, showed Neal demanding sexual favors from her in exchange for drugs.[36] He has never accepted responsibility or shown remorse for his actions, including in his most recent motion. The nature and circumstances of an offense involving the long-term distribution of 6.7 kilograms of heroin by an unrepentant career criminal are very serious and weigh heavily against Neal's early release.

### b. The History and Characteristics of the Defendant.

In 1995, Neal sexually assaulted a 14-year-old girl, holding her down and forcibly engaging in vaginal intercourse with her while she repeatedly begged him to stop.[37] Neal threatened the victim, saying, "Don't make me hurt you."[38] He then told her not to tell anyone about what had happened. He failed to appear for sentencing and fled the state. In

---

[36] Dkt. 212 at 2-3.

[37] Dkt. 209 at ¶ 63.

[38] *Id.*

*U.S. v. Neal*
No. 4:14-cr-00027-01-RRB-KFR          Page 10 of 15

1997, he was arrested in Oklahoma and extradited back to Alaska.[39] He was sentenced to six years in prison, with four years suspended.[40]

In 2002, while Neal was on probation following his release from prison, he was arrested during a controlled delivery of a parcel containing 500 grams of cocaine to an apartment in Fairbanks.[41] He ran out of the apartment as officers made entry, threw the drugs into a dumpster, and hid. He pleaded guilty to Misconduct Involving a Controlled Substance in the Fourth Degree and was sentenced to five years in prison.[42]

Between November 2008 and February 2009, Neal distributed powder cocaine and crack cocaine three times to another individual.[43] He pleaded guilty before this Court to Drug Conspiracy and was sentenced to 41 months.[44] He was still on supervised release following this conviction at the time of the offenses in this case.[45]

Against this record, Neal's history and characteristics offer little in the way of mitigation. He did not suffer any physical or mental abuse during his upbringing.[46] He

---

[39] *Id.*

[40] *Id.*

[41] *Id.* at ¶ 67.

[42] *Id.*

[43] *Id.* at ¶ 68.

[44] *Id.*

[45] *Id.* at ¶ 71.

[46] *Id.* at ¶ 80.

Case 4:14-cr-00027-RRB     Document 344     Filed 05/19/26     Page 11 of 15

appears to have enjoyed a positive relationship with his mother.[47] He has no history of mental health issues.[48] He was not addicted to or abusing controlled substances at the time of the offense.[49] He is otherwise physically healthy.[50] Neal's history and characteristics reveal a great deal of aggravating circumstances, but little if any mitigation to weigh against it, and this factor thus weighs against compassionate release.

### c. The Need to Promote Respect for the Law.

At no point in Neal's adult life has he shown he is willing or capable of respecting the law. He fled the state to avoid sentencing in his sexual assault case. He was still on probation for that conviction when he received the parcel containing 500 grams of cocaine. He was still on parole for his state drug case when he distributed powder and crack cocaine three times in his first federal case.[51] And he was still on supervised release in his first federal case when he committed the offenses here. That is three times that Neal has committed a new offense while under supervision following a previous offense. There is no reason based on this record for this Court to trust him again. Neal's request to dramatically reduce his sentence would be inconsistent with the substantial need to promote respect for the law by holding Neal accountable for a lifetime of criminality.

---

[47] *Id.*

[48] *Id.* at ¶ 86.

[49] *Id.* at ¶ 88.

[50] *Id.* at ¶ 85.

[51] *Id.* at ¶ 67 (showing Neal was discharged from parole February 21, 2009).

### d. The Need to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public.

At 49 years old, Neal poses a significant risk of recidivism. According to a study by the Sentencing Commission, 62.1% of drug trafficking defendants in Neal's age group and criminal history category were arrested again following their release from prison:[52]

Table 4. Rearrest Rates by Age at Release and Criminal History Category for Federal Drug Trafficking Offenders Released in 2010

* N<=20  ** N<=10  . N=0

| Age | CHC I | CHC II | CHC III | CHC IV | CHC V | CHC VI | CO/ACC | Total |
|---|---|---|---|---|---|---|---|---|
| Younger than 21 | 65.0% | 85.0%* | 86.7%* | 100.0%** | . | . | . | 70.1% |
| 21 to 29 Years | 47.0% | 62.4% | 75.3% | 83.2% | 82.5% | 86.0% | 76.0% | 59.3% |
| 30 to 39 Years | 32.4% | 47.6% | 59.1% | 66.5% | 73.4% | 81.6% | 65.8% | 51.3% |
| 40-49 Years | 23.5% | 38.0% | 43.3% | 54.8% | 62.1% | 71.1% | 55.6% | 39.7% |
| 50-59 Years | 16.3% | 26.3% | 41.6% | 39.8% | 51.0% | 72.6% | 47.8% | 30.9% |
| 60 Years and Older | 10.9% | 6.8% | 27.5% | 15.0%* | 14.3%* | 57.1%* | 40.0% | 16.4% |
| Total | 33.3% | 46.2% | 57.6% | 64.1% | 69.4% | 77.4% | 58.9% | |

If the Court reduces Neal's sentence by five years, he will be released no later than 2029, when he will be 52 years old. At that point, he will still be part of a group of offenders that reoffends 51% of the time.

On top of this, Neal has a prior conviction for sexually assaulting a minor. The risk to the public that he would pose if released is therefore quite significant. Neal's early release

---

[52] USSC, *Recidivism of Federal Drug Trafficking Offenders Released in 2010* at 32 (January 2022), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research publications/2022/20220112_Recidivism-Drugs.pdf.

from custody would not afford adequate deterrence to criminal conduct or protect the public from future crimes.

### e. The Need to Avoid Unwarranted Sentencing Disparities.

As mentioned above, there was an insufficient number of defendants nationwide over the past five years sentenced under the drug trafficking guideline of § 2D1.1 with a total offense level of 34 and a Criminal History Category of V to yield any data.[53] Nevertheless, the Court can extrapolate some relevant information by looking at the groups of defendants one offense level above and below. For defendants with all those same criteria, but a total offense level of 33, the median length of imprisonment was 180 months.[54] For defendants with a total offense level of 35, the median length of imprisonment was 205 months.[55] It is fair to infer from this that, if there were a sufficient number of defendants with a total offense level of 34, their median sentence would be somewhere between 180 and 205 months.

A sentence of 264 months is a disparity compared to 204 months, but it is not an "unwarranted" disparity in light of the facts of this case.[56] Neal distributed 6.7 kilograms of heroin, while on supervised release in his last federal drug conviction, and with a prior felony conviction for raping a child, for which he fled the state to evade prosecution. Given

---

[53] Dkt. 339-2.

[54] Dkt. 339-3.

[55] Dkt. 339-4.

[56] 18 U.S.C. § 3553(a)(6).

Case 4:14-cr-00027-RRB     Document 344     Filed 05/19/26     Page 14 of 15

that very unique constellation of aggravating factors, Neal's 264-month sentence is not an

unfair disparity in this case.

## VI. Conclusion.

For all the foregoing reasons, Neal has failed to establish either an extraordinary and

compelling reason to modify his sentence or that the balance of the sentencing factors in

18 U.S.C. § 3553(a) support early release. The government therefore respectfully asks this

Honorable Court to deny Neal's motion.

RESPECTFULLY SUBMITTED this 19th day of May 2026 in Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney

*s/ Christopher D. Schroeder*
CHRISTOPHER D. SCHROEDER
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2026,
a copy of the foregoing was
served via regular U.S. Mail on:

Seneca Loyal Neal, #36074-086
FCI Safford
Federal Correctional Institution
P.O. Box 9000
Stafford, AZ 85548

*s/ Christopher D. Schroeder*
Office of the U.S. Attorney